**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

No. 00-775 C
(Judge Wheeler)

**BRERO CONSTRUCTION, INC.**,

Plaintiff,

**v.**

**THE UNITED STATES**,

Defendant.

# DEFENDANT'S PRE-TRIAL MEMORANDUM OF CONTENTIONS OF FACT AND LAW AND WITNESS AND EXHIBIT LISTS

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

TODD M. HUGHES
Assistant Director

J. REID PROUTY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7586
Fax: (202) 514-7969

April 21, 2006

Attorneys for Defendant

# TABLE OF CONTENTS


**Page**

INTRODUCTION . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . 5

I. ISSUE 1: Whether Brero Is Precluded From Pursuing The Majority Of Its Claims By The Waiver Provisions Of Contract Modifications 8 and 11 . . . . . 5

A. Contentions Of Law Regarding Waiver Through Contract Modification . . . . . . . 5

B. Contentions Of Fact Regarding Waiver Through Contract Modification . . . . . . . 6

II. ISSUE 2: Whether DOL Is Liable For Any Delay . . . . . . . . . . 7

A. Contentions Of Law Regarding Liability For Delay . . . . . . . . . . 7

B. Contentions Of Fact Regarding Liability For Delay . . . . . . . . . . 7

III. ISSUE 3: Whether Brero May Recover Home Office Overhead (<u>Eichleay</u> Damages) . . . 7

A. Contentions Of Law Regarding Home Office Overhead . . . . . . . . . . 8

B. Contentions Of Fact Regarding Home Office Overhead . . . . . . . . . . 8

IV. ISSUE 4: Whether DOL Is Liable For Brero's Inefficiency Claim . . . . . . . . . . 8

A. Contentions Of Law Regarding "Changes" . . . . . . . . . . 8

B. Contentions Of Fact Regarding Brero's Inefficiency Claim . . . . . . . . . . 9

V. ISSUE 5: Whether DOL Rightly Asserted Liquidated Damages . . . . . . . . . . 9

A. Contentions Of Law Regarding Liquidated Damages . . . . . . . . . . 9

B. Contentions Of Fact Regarding Liquidated Damages . . . . . . . . . . 9

THE GOVERNMENT'S LIST OF WITNESSES . . . . . . . . . . 11

THE GOVERNMENT'S EXHIBIT LIST . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . 14

# TABLE OF AUTHORITIES

## CASES

Al Johnson Construction Co. v. United States,
20 Cl.Ct. 184, 196 (1990) . . . . . . . . . . 8

Aydin Corp. v. Widnall,
61 F.3d 1571 (Fed. Cir. 1995) . . . . . . . . . . 8

C.B.C. Enterp., Inc. v. United States,
24 Cl. Ct. 187 (1991) . . . . . . . . . . 8

CEMS, Inc. v. United States,
59 Fed. Cl. 168 (2003) . . . . . . . . . . 7, 9

C & H Commercial Contractors, Inc. v. United States,
35 Fed. Cl. 246 (1996) . . . . . . . . . . 5

Coastal Industries, Inc. v. United States,
32 Fed. Cl. 368 (1994) . . . . . . . . . . 7

Eichleay Corp.,
60-2 BCA ¶ 2688 (1960) . . . . . . . . . . 7, 8

Interstate Gen. Gov't Contrs., Inc. v. West,
12 F.3d 1053 (Fed. Cir. 1993) . . . . . . . . . . 8

Jennie-O Foods, Inc v. United States,
217 Ct. Cl. 314, 580 F.2d 400 (1978) . . . . . . . . . . 9

Mega Construction Co., Inc. v. United States,
29 Fed. Cl. 396 (1993) . . . . . . . . . . 7

Merrit-Chapman & Scott Corp. v. United States,
198 Ct. Cl. 223, 458 F.2d 42 (1972) . . . . . . . . . . 6

West v. All State Boiler, Inc.,
146 F.3d 1368 (Fed. Cir. 1998) . . . . . . . . . . 8

## STATUTES

48 C.F.R. § 52.243-4 . . . . . . . . . . 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BRERO CONSTRUCTION, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 00-775C |
| | ) | (Judge Wheeler) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S PRE-TRIAL MEMORANDUM OF
CONTENTIONS OF FACT AND LAW AND WITNESS AND EXHIBIT LISTS

In accordance with the Court's February 16, 2006 order and pursuant to Appendix A to the Rules of the United States Court of Federal Claims, the United States respectfully submits its memorandum of contentions of fact and law and witness and exhibit lists.

## INTRODUCTION

At the trial in this case, Brero Construction, Inc. ("Brero") bears the burden of establishing that the Department of Labor ("DOL") provided it deficient plans and specifications ("A & E errors") which were responsible for added "inefficiencies" and 162 days of construction delays related to its contract with DOL to build a Job Corps Training Center in San Jose, CA ("the contract" or "the project"). The Government bears the burden of proving its counterclaim, that Brero owes liquidated damages for its failure to substantially complete the project in a timely manner.

The evidence will demonstrate that, for a project of its size, the Job Corps Center suffered relatively few A & E errors, and that they had a negligible impact upon the scheduling and efficiency of the construction. Indeed, the two generalized claims which are the basis of Brero's suit are poorly supported and their bases have shifted considerably since construction was completed. More than half of the delay for which Brero seeks to hold DOL accountable

arose due to exceptionally heavy rains in the project area – an "act of God" which is not compensable. Moreover, other portions of Brero's delay claim are founded upon contract modifications for which it has already received full compensation.

STATEMENT OF FACTS

On January 15, 1993, Brero and DOL entered into the contract for the work upon the San Jose Job Corps Center. Brero was to demolish certain buildings on the site, renovate others, and build some new buildings. The original contract was for a firm fixed price of $8,268,000. Certain modifications were made to the contract and its price was accordingly raised to $8,999,199 and its completion date was also adjusted. The original completion date of the contract had been 546 days from the Notice to Proceed, which was given on February 1, 1993. With the modifications noted above, the substantial completion date was ultimately extended to September 9, 1994 with a project closeout date of November 4, 1994.

In early 1993, the San Jose area was subjected to very heavy rains. These rains caused the soil in the area of the Job Corps Center to be so saturated with water that progress on the project was substantially delayed. In March, 1993, Brero brought the soil conditions to the attention of the contracting officer and the parties engaged in discussions on the appropriate remedy. On June 1, 1993, Brero requested a 47-day time extension without additional cost from the contracting officer "due to inclement weather" and a 53-day compensated time extension due to "unusual site conditions." By letter dated October 29, 1993, the contracting officer agreed to provide a non-compensable 90 day extension of time. At this point, Brero maintained that the condition of the soils was a differing site condition, notwithstanding the heavy rains.

The 90-day, non-compensable extension of time was formalized in bilateral contract

Modification 8, signed by Brero's president, without reservation, on May 20, 1994 and by the contracting officer on June 5, 1994. This 90-day extension changed the substantial completion date from June 11, 1994 to September 9, 1994 with project close-out correspondingly extended from August 6, 1994 to November 4, 1994.

The project was substantially completed on November 7, 1994.

Brero made several requests for equitable adjustment regarding the changes and the supposed inefficiencies they caused. A number of them have been resolved through a settlement at the Department of Labor Board of Contract Appeals. Two generalized claims, which were denied by the contracting officer and not resolved by settlement remain: they are Change Order Proposal ("COP") 170 and COP 222. COP 170 was a request for a $246,411.97 equitable adjustment based upon the additional "general conditions" costs allegedly generated by the change orders (which Brero alleges were caused by A & E errors) and the corresponding delay that they caused in completion of the project. COP 222 was a request for $697,826.80 in equitable adjustment for "loss of productivity" in the framing work on the project ("the inefficiency claim"), also allegedly caused by the cumulative effect of A & E errors.

Upon submission of COPs 170 and 222, DOL had the claims audited and reviewed by outside consultants. Mr. John McTyre, of Warner Construction Consultants, evaluated both the delay claim and the inefficiency claim and recommended their denial.

Mr. McTyre recommended denial of the delay claim as a result of its containing several errors elucidated in his report, which will be explained in greater detail at trial. In particular, Brero's delay claim does not recognize that 90 days of the claimed 162-day delay was addressed in Modification 8, which extended contract performance for 90 days. Brero's delay claim also

failed to recognize that the project was substantially complete by November 7, 1994, which reduced the period of delay by an additional 13 days. Of the 59 calendar days remaining in Brero's delay claim, Mr. McTyre's analysis found DOL to be arguably liable for only 17 of them.[1]

Mr. McTyre's analysis also found Brero's claims for extended performance costs (which totaled $246,411) to be overstated. The first component of this cost, "extended general conditions," was calculated by Brero to be $109,052. Mr. McTyre found that this number was exaggerated because it assigned responsibility for costs imposed after substantial completion and included costs which were not time-related, such as test/inspection. Applying more traditional means of calculating these costs yielded $456 per day for delay costs.[2]

Brero's claim also asserted that it should be compensated for extended home office overhead costs of $137,360. Mr. McTyre recommended paying none of these costs because there was no suspension of work and, therefore, Brero was not eligible for such a cost component.

Mr. McTyre also critically examined Brero's inefficiency claim. He recommended against paying any of this claim because Brero employed a highly dubious methodology to support it: its findings of inefficiency were never tied to any particular contract modifications, leaving the critical issues of causation unsubstantiated; it sought to compare the framing of a

---

[1] As explained in Section I of the Argument section below, this liability should have been reduced even further as a result of Modification 11 to the contract which eliminated liability for any delays caused by specified COPs.

[2] Applying this number to the 17 days of delay for which DOL considered itself arguably liable yields an additional cost of $7,752. This is more than offset by the $9,870 in liquidated damages DOL assessed against Brero for its 42 days of unjustified delay.

"clean" building with ones which included change orders, but the choice of a "clean" building was highly subjective and Brero's analysis did not compare likes to likes, but could better be described as utilizing an "apples to oranges" comparison. Accordingly, Mr. McTyre found this claim to be utterly unsupported.

In addition to the methodological concerns regarding the inefficiency claim as expressed by Mr. McTyre, there is evidence that other factors may have contributed to Brero's inefficiency. In particular, Brero significantly underestimated its framing costs and its relationship with at least one of its subcontractors may have had a significant impact upon the delays and inefficiencies surrounding Brero's work upon the project. Moreover, Brero admittedly significantly underestimated its framing costs – a factor not considered in its formulation of this claim.

Both of the generalized claim COPs were denied by the contracting officer in a decision dated June 1, 2000, and the Government asserted a $9,870 claim against Brero for liquidated damages as a result of Brero's completing the project 42 days late (the contracting officer determined that Brero should only be held responsible for 42 days of the 59 day delay) at the contractual rate of $235 per day.

## ARGUMENT

### I. ISSUE 1: Whether Brero Is Precluded From Pursuing The Majority Of Its Claims By The Waiver Provisions Of Contract Modifications 8 and 11

#### A. Contentions Of Law Regarding Waiver Through Contract Modification

It is well-established that a bilateral contract modification which contains no reservations constitutes an accord and satisfaction, precluding further delay damages upon matters encompassed in the modification. C & H Commercial Contractors, Inc. v. United States, 35 Fed.

Cl. 246, 252 (1996) (citing cases); Merrit-Chapman & Scott Corp. v. United States, 198 Ct. Cl. 223, 458 F.2d 42 (1972).

B. Contentions Of Fact Regarding Waiver Through Contract Modification

Modifications 8 and 11, are bilateral contract modifications without reservations. Each refers to the equitable adjustments clause of the contract and Modification 11 provides specifically that, "Execution of this contract modification constitutes final and complete agreement for equitable adjustment for the change order proposals (Final Resolution Items) listed on page 3 and 4 of this modification." Pages 3 and 4 of Modification 11 included 71 individual COPs. Modification 8 included the 90 day no-cost extension of time to complete contract performance as a result of the heavy rains in the area.

These modifications affect both the time impact analysis and the inefficiency analysis at the heart of Brero's claims. Modification 8 eliminates 90 days from Brero's 162-day delay claim. Modification 11 eliminates liability for delay for those change orders resolved by it. Those change orders, according to Brero's analysis, are responsible for more than 17 days of delay, which is the number of days remaining in Brero's delay claim after the application of Mr. McTyre's analysis.

The elimination of 71 COPs by Modification 11 also significantly impacts the viability of Brero's inefficiency analysis. Since Brero's methodology for its inefficiency analysis is premised upon the cumulative effect of DOL's change orders, in toto, and does not assign responsibility for the inefficiency to any particular change order, (in addition to its other failings) it is impossible to utilize in these circumstances because Brero has already been fully compensated for a substantial number of the change orders which it now alleges affected its

efficiency. Brero cannot receive double compensation for these change orders, but its methodology does not permit it to separate out those change orders for which it has already received complete compensation.

## II. ISSUE 2: Whether DOL Is Liable For Any Delay

### A. Contentions Of Law Regarding Liability For Delay

The law upon liability for delay is straightforward. To recover upon a delay claim, a contractor must prove unreasonable delay, proximately caused by Government action, and that the Government was the sole proximate cause of the delay and that no concurrent cause would have equally delayed the contractor. CEMS, Inc. v. United States, 59 Fed. Cl. 168, 232 (2003); Coastal Industries, Inc. v. United States, 32 Fed. Cl. 368, 372 (1994). When both parties contribute to the delay, neither party can recover damages unless there is a clear apportionment of the delay and expense attributable to each. Mega Construction Co., Inc. v. United States, 29 Fed. Cl. 396, 424 (1993).

### B. Contentions Of Fact Regarding Liability For Delay

Consistent with his original report upon Brero's claim, Mr. McTyre will demonstrate that Brero's time impact analysis is seriously flawed and that, at most, DOL is liable for only 17 days of delay. Moreover, we will demonstrate that there were other causes for delay, such as Brero's disputes with its subcontractors.

## III. ISSUE 3: Whether Brero May Recover Home Office Overhead (Eichleay Damages)

Brero's delay claim seeks $137,360 in extended home office overhead, allegedly calculated according to the formula set forth in Eichleay Corp., 60-2 BCA ¶ 2688 (1960). This is yet another claim that is insupportable in fact or law.

A. Contentions Of Law Regarding Home Office Overhead

There are "two prerequisites to application of the Eichleay formula to recover unabsorbed overhead . . . (1) that the contractor be on standby and (2) that the contractor be unable to take on other work." Interstate Gen. Gov't Contrs., Inc. v. West, 12 F.3d 1053, 1056 (Fed. Cir. 1993). A contractor is "on standby" only if the Government stops performance for a period of uncertain duration. West v. All State Boiler, Inc., 146 F.3d 1368, 1373 (Fed. Cir. 1998). Thus, even if DOL were liable for any delay, Brero would be entitled to recover overhead only in the form of mark-up upon its direct costs. C.B.C. Enterp., Inc. v. United States, 24 Cl. Ct. 187 (1991).

B. Contentions Of Fact Regarding Home Office Overhead

Quite simply, DOL never ordered a suspension of work of any duration, much less one of indefinite duration. In such circumstances, DOL is not liable for Brero's home office overhead.

IV. ISSUE 4: Whether DOL Is Liable For Brero's Inefficiency Claim

Brero's inefficiency claim appears to be premised upon the "changes" clause of the contract (see Section G.13, "Equitable Adjustments"), under the premise that the changes created costs not captured by the negotiated change order proposals and that DOL is liable for them. We demonstrate below that the alleged inefficiency costs were not supported.

A. Contentions Of Law Regarding "Changes"

A Government-directed change in the "method or manner of performance" of a contract is subject to equitable adjustment. 48 C.F.R. § 52.243-4; Aydin Corp. v. Widnall, 61 F.3d 1571, 1577 (Fed. Cir. 1995). When a change occurs, a contractor is only entitled to recover "to the extent that it was damaged by the change." Al Johnson Construction Co. v. United States, 20 Cl.Ct. 184, 196 (1990) (citing cases).

B. Contentions Of Fact Regarding Brero's Inefficiency Claim

Brero's inefficiency claim is unsupportable for those reasons set forth in Mr. McTyre's analysis: primarily, Brero has not demonstrated causation linked to particular change orders; Brero's analysis was subjective regarding its "clean building;" and it made "apples to oranges" comparisons, not at all appropriate for deriving supportable cost conclusions. Indeed, Brero's choice of the "clean" period which it used to compare with other periods of time contains a built-in bias which would inevitably increase the appearance of inefficiency. Moreover, the analysis Brero used to support this claim ignored other problems Brero encountered which were not attributable to the Government: namely, Brero's admittedly inaccurate estimates and its relationship with its subcontractors.

V. ISSUE 5: Whether DOL Rightly Asserted Liquidated Damages

A. Contentions Of Law Regarding Liquidated Damages

The liquidated damages provisions of a contract are generally permissible. Jennie-O Foods, Inc v. United States, 217 Ct. Cl. 314, 580 F.2d 400 (1978). Moreover, when the contractor has not carried its burden of proving compensable delays, the Court will sustain the contracting officer's decision to withhold money for liquidated damages. E.g., CEMS, Inc. v. United States, 59 Fed.Cl. 168, 233 (2003).

B. Contentions Of Fact Regarding Liquidated Damages

The terms of the contract provided that Brero would be liable for liquidated damages in the amount of $235 per day past the completion date (see Section F.3(a)), which, per Modification 8, was September 9, 1994. The project was substantially completed on November 7, 1994, but the contracting officer determined not to hold Brero responsible for 17 days of the

delay. Accordingly, Brero was assessed liquidated damages for 42 days of delay, or $9,870.

We understand that Brero may argue that there was an accord and satisfaction of this claim by virtue of the settlement of claims before the Board for Contract Appeals. Factually, the counterclaim before the Board for Contract Appeals and the counterclaim in this case were about distinctly different matters.

## THE GOVERNMENT'S LIST OF WITNESSES

At trial, the Government expects to call the following witnesses, to testify as follows:

1. Mr. John Steenbergen. Mr. Steenbergen was the contracting officer in this case and will testify regarding his decision to deny Brero's claims. We expect his testimony to take one to two hours.

2. Mr. Michael O'Malley. (May call). Mr. O'Malley was the contracting officer's technical representative and can testify regarding the nature of the alleged A & E errors and how they would have affected Brero's ability to complete the contract. Depending upon the testimony offered by Brero's witnesses, Mr. O'Malley's testimony could last between one and four hours.

3. Mr. Troy Caperton. (May call). Mr. Caperton was the design and construction project manager for DMJM, the consultant hired by DOL to manage the project. He could testify regarding responsibility for change orders and the effect that alleged A & E errors would have had upon the project. Depending upon the testimony offered by Brero's witnesses, Mr. Caperton's testimony could last between one and four hours.

4. Mr. John McTyre. Mr. McTyre is the Government's expert witness upon scheduling and cost matters. He will explain the significant flaws in Brero's time impact analysis and "inefficiency" claims. We expect that his testimony will last between two and four hours.

THE GOVERNMENT'S EXHIBIT LIST

Pursuant to paragraph 16 of Appendix A of the Rules of the United States Court of Federal Claims ("RCFC") and the Court's order filed February 16, 2006, defendant, the United States, respectfully submits the attached list of exhibits it expects to offer at trial, other than those to be used exclusively for impeachment.

Defendant reserves the right to (1) amend, revise, or supplement this exhibit list as permitted by the Rules of this Court; and (2) use any exhibit listed on plaintiff's exhibit list.

1. Brero's request for "inclement weather" extension dated June 1, 1993.
2. Brero's request for "inclement weather" extension of 100 days dated August 12, 1993.
3. Brero Project Close-out report dated January 11, 1995.
4. Brero Request for Equitable Adjustment: A & A Mechanical Contractors, Inc. Pass-Through Claim
5. Letter from Brero to A & A Mechanical Contractors, Inc., dated August 13, 1993.
6. Letter from Brero to A & A Mechanical Contractors, Inc., dated October 18, 1993.
7. Second letter from Brero to A & A Mechanical Contractors, Inc., dated October 18, 1993.
8. Letter from Brero to A & A Mechanical Contractors, Inc., dated November 1, 1993.
9. Second letter from Brero to A & A Mechanical Contractors, Inc., dated November 1, 1993.
10. Letter, with attachment, from Brero to A & A Mechanical Contractors, Inc., dated December 6, 1993.
11. Letter of transmittal, with attachment, from Brero to A & A Mechanical Contractors, Inc., dated December 16, 1993.

12. Letter from Brero to A & A Mechanical Contractors, Inc., dated March 25, 1994.

13. Letter from Brero to A & A Mechanical Contractors, Inc., dated April 8, 1994.

14. To the extent that they are not included in plaintiff's exhibits, the contract and all of its modifications.

15. Two-page summary of Brero monthly pay requests compiled by John Steenbergen.

16. To the extent that they are not included in plaintiff's exhibits, all versions of COPs 170 and 222 and the expert reports which accompanied them.

17. To the extent that it is not included in plaintiff's exhibits, the contracting officer's final decision, dated June 1, 2000.

18. To the extent that they are not included in plaintiff's exhibits, the Warner Construction Consultant Reports dated May 24, 1999 and December 1, 1999.

19. John McTyre's direct testimony in this case and accompanying demonstrative exhibits.

CONCLUSION

For all of the above reasons, the Government respectfully requests that the Court find that DOL is not liable for any portion of Brero's claim and that the Court enter judgment in favor of the United States for its liquidated damages counterclaim.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Todd M. Hughes
TODD M. HUGHES
Assistant Director

s/ J. Reid Prouty
J. REID PROUTY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7586
Fax: (202) 514-7969

Attorneys for Defendant

April 21, 2006