IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BRERO CONSTRUCTION, INC., | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | NO. 00-775C |
| | ) | (Judge Yock) |
| THE UNITED STATES, | ) | |
| DEFENDANT. | ) | |

PALINTIFF'S PRE-TRIAL MEMORANDUM OF CONTENTIONS OF FACT AND LAW AND WITNESS AND EXHIBITS LISTS

Pursuant to the Court's Order February 16, 2006 Order and Pursuant to Appendix A to the Rules of the United States Court of Federal Claims, the Plaintiff hereby submits its memorandum of contentions of fact and law and witness and exhibit lists.

**Introduction:**

At the trial in this matter Plaintiff Brero Construction, Inc. (hereinafter "Brero") will prove that the Department of Labor (hereinafter "DOL") provided defective and deficient plans and specifications which included admitted architect errors and omissions ("A/E Errors") for the construction of the Job Corps Training Center in San Jose, California. These defective and deficient plans resulted in inefficiencies and delays in the construction of the facility. The DOL has claimed that the contract was completed late and that Brero owes the DOL for liquidated damages on the contract.

The evidence will show that the DOL evaluated the claims submitted by Brero and in many instances through internal review found that the changes were the result of the A/E errors and omissions for which the government was responsible. Brero is seeking compensation under two remaining Requests for Equitable Adjustment ("REA") number 170 and 222.

**Statement of Facts:**

On January 15, 1993, plaintiff, Brero Construction Inc. (“Brero”), and the Department of Labor entered into a contract for work involving the San Jose, California Job Corps Center. Brero was to demolish certain buildings on the site, renovate others, and build some new buildings. The original contract was for a firm fixed price of $8,268,000.

Certain modifications were made to the contract and its price was accordingly raised to $8,999,199.

The original completion date of the contract had been 546 days from the Notice to Proceed, which was February 1, 1993. With the modifications noted above, the substantial completion date was pushed back to September 9, 1994 with a project closeout date of November 4, 1994.

In early 1993, the San Jose area was subjected to very heavy rains. These rains caused the soil in the are of the Job Corps Center to be so saturated with water that progress on the project would be substantially delayed. In March, 1993, Brero brought the soil conditions to the attention of the Contracting Officer (“C.O.”) and the parties engaged in discussions on the appropriate remedy. Ultimately, the C.O. agreed to provide a non-compensable extension of time.

Throughout the lifetime of the project, the Department of Labor made several changes to the contract. They included some additional requirements. For many of these changes, the C.O. determined that no additional costs were incurred and that no additional time would be required for completion of the job. The project was substantially completed on November 7, 1994.

Brero made several requests for equitable adjustment regarding the changes and the supposed inefficiencies they caused. A number of them have been resolved through a settlement at the Department of Labor Board of Contract Appeals. Brero submitted a Time Impact Analysis dated October 9, 1998, a Revised Quantum dated December 2, 1998, a Final Loss of Productivity Analysis dated September 20, 1999, revised COP 170 and 222, and a Time Impacted Analysis including A/E errors in October 1999.

The C.O has submitted a Preliminary Evaluation of Brero Construction, Inc. Time Impact Analysis (October 9, 1998) and Revised Quantum (December 22,1998), Loss of Productivity Analysis (September 20, 1999), Proposed Change Order 170 (September 1999) .

Two sets, which were denied by the C.O. and not resolved by settlement remain: They are Change Order Proposal ("COP") 170 and COP 222. COP 170, which is a request for a $ 246,411.97 equitable adjustment was based upon the additional "general conditions" costs generated by the change orders and the corresponding delay they caused in completion of the project. COP 222 is a request for $ 697, 826.80 in equitable adjustment for "loss of productivity" in the framing work on the project, caused by actions of the Department of Labor.

Both remaining COP's were denied by the C.O. in a decision dated June 1, 2000, and the Government asserted a $9,870 claim against Brero for liquidated damages as a result of Brero's completing the project 42 days ( the C.O. determined that Brero should only be held responsible for 42 days of the 59 day delay) at the contractual rate of $ 235 per day.

**Statement of Contested Facts**

The parties generally dispute whether the requests for equitable adjustment in COPs 170 and 222 should be paid to Brero. Whether the delay in completion of the project was compensable or whether a portion of it should not be subject to any compensation whatsoever. This, in turn, is based upon assigning responsibility for the delays. The Government believes that many of the delays were based upon acts of God, which are not compensable and that other delays would have occurred in any event due to problems Brero was experiencing with subcontractors. Brero believes that its analysis shows the delays it is claiming are squarely the fault of the Government.

Whether there was a calculation of the appropriate overhead in the delay claim. It is the Government's position that the overhead claimed by Brero is either not appropriate at all or too high. Brero believes otherwise.

Whether the labor inefficiencies claimed by Brero are compensable. The Government questions that total cost method used by Brero in determining that its changes in the contract caused the labor inefficiencies cited by Brero.

Brero argues that it made a reasonable calculation, demonstrating its different efficiency when "clean" of Department of Labor inefficiencies compared to when it was subject to them.

Whether Brero owes the United States money under the liquidated damages clause of the contract. Brero asserts this counterclaim is barred because the Government's claim was released in the settlement of the settlement agreement in the related case before the Department of Labor Board of Contract Appeals.

**Statement of Facts to be addressed at Trial**

Plaintiff submitted a Proposal dated November 3, 1997, followed by Plaintiff's Request for Equitable Adjustment dated November 14, 1997. Whether Plaintiff is entitled to compensation under the Proposal.

Plaintiff submitted a Time Impact Analysis on October 9, 1998. Whether Plaintiff is entitled to compensation under the Proposal.

Plaintiff submitted a Revised Quantum dated December 22, 1998. Whether Plaintiff is entitled to compensation under the Proposal.

In October 1999 Brero submitted a Final Revision to the Quantum in regards to Change Order Proposals 170 and 222. The Proposal addressed the A/E errors identified by the DOL. Whether Plaintiff is entitled to compensation under the Proposal.

Defendant has had Warner Construction Consultants, Inc. prepare a Preliminary Evaluation of Brero's Claims dated May 24, 1999. Whether the Evaluation addresses the issues raised by the Plaintiff.

Defendant has had Warner Construction Consultants, Inc. prepare an Evaluation of Brero's Claims dated December 1, 1999. Whether the Evaluation addresses the issues raised by the Plaintiff and the allegations of A/E errors.

**Identification of Contract Clauses and Regulations Applicable**

1. Breach of Contract
2. Accord and Satisfaction
3. Suspension of Work

4. Government Delay of Work
5. Unabsorbed Overhead
6. Loss of Efficiency

**Proposed Conclusions of Law with Citations**

**1. Breach of Contract**

In a breach of contract action, a contractor may recover both delay costs (costs incurred while no work was being performed) and impact costs (increased costs of performing work). Luria Bros. & Co. v. United States, 177 Ct. Cl. 676, 369 F.2d 701 (1966).

**2. Accord and Satisfaction**

Accord and satisfaction is the process of the making and performing of a bilateral agreement modifying an already existing contract. The "accord" is the bilateral agreement as to some specified additional performance to satisfy a disputed claim. The "satisfaction" is the completion of that specified additional performance. An accord is like any other contract. "Plaintiff may not at will rescind the accord. Like other contracts, an accord, if supported by consideration, cannot be validly repudiated except for cause." *Robinson Contracting Co., Inc. v. U.S.*, 16 Cl.Ct. 676 (1989)

The price adjustment document - the change order or contract modification, specifically states the additional work performed or to be performed by the contractor and the additional compensation to be paid by the government.

Customarily, but not in every case, the change order contains release language attempting to further specify and limit recovery of costs caused by the changed work. That is, for instance, the impact of the additional work on unchanged work, or the effect on the time of performance of the base contract.

Release is a different theory than accord and satisfaction. Both are means of discharging an obligation. Accord and satisfaction is a bilateral operation in which the parties exchange consideration - that is, compensation by one for performance by the other, thereby discharging the claim. Discharging a claim by release, on the other hand, is a unilateral action by one of the parties disclaiming a contract right or obligation.

CIBINIC & NASH , 3d, - p. 1218, *et seq.*

In practice, Courts and Boards do not always make this distinction. The Court of Federal Claims pointed out the confusion and explained the difference. *McClain Plumbing & Elec. Serv., Inc. v. U.S.*, 30 Fed.Cl 70, 78 (1993) This decision pointed out that "[w]hile an accord and satisfaction *may* contain an express release for the immediate discharge of a contractual right or obligation, a release constitutes no condition precedent to discharge by accord and satisfaction." (emphasis in original)

Cibinic & Nash discuss 5 theories under which a release may be avoided.

•Lack of consideration

•Mistake

•Economic Distress

•Fraud

•Lack of Authority

Cibinic & Nash generally discuss failure of accord and satisfaction; however, the Courts and Boards have stated 5 essential elements of an effective accord and satisfaction.

•Proper subject matter

•Competent parties

•Meeting of the minds

•Consideration

•Acceptance of payment or performance in satisfaction of a claim or demand which is a bona fide dispute *Westerhold v. U.S.*, 28 Fed.Cl. 172 (1993)

Aside from its own existence as a distinct theory, release seems also to be treated as if it were a part of the consideration in an accord. This has not been seen to be specifically stated in any decision, but is simply an observation, and perhaps an explanation for the confusion pointed out by the Court in *McClain*.

**CASE LAW**

Although the newer cases were all found in the Claims Court or Court of Federal Claims, they all rely upon decisions from and consistent with Court of Claims decisions.

*Brock & Blevins,Co. v. U.S.*, 343 F.2d 951 (Ct.Cl. 1965)

This decision is most often cited for the elements of an accord and satisfaction. '"The essential elements of an effective accord and satisfaction are proper subject matter, competent parties, meeting of the minds of the parties, and consideration. And its most common pattern is a mutual agreement between the parties in which one pays or performs and the other accepts payment or performance in satisfaction of a claim or demand which is a bona fide dispute. citing *Nevada Half Moon Mining Co. v. Combined Metals Reduction Co.*, 176 F.2d 73 (10th Cir. 1949), cert. denied 338 U.S. (1950)

In this case the contractor was delayed and negotiated an equitable adjustment. In the contractor's subsequent breach of contract claim for delay damages the Court found that "The claim for damages was necessarily considered by both parties as an integral part of the claim for extra work."

*Merritt-Chapman & Scott Corp. v. U.S.*, 439 F.2d 185 (Ct.Cl. 1971)

In this case where a modification for an extension of time was written under the Termination for Default-Damages for Delay-Time Extensions clause, the contractor requested delay damages under the Suspension of Work Clause for monetary damages due to actions of the government. The government cited an accord and satisfaction under the modification.

The Court held that monetary damages are not available under the termination clause and that the modification necessarily could only be for additional time. The Court reasoned that the modification was not an accord and satisfaction of any

monetary claim, and that the modification was only evidence of an accord and satisfaction as to the length of the various delays.

*Nelson Bros. Const. Co. v. U.S.*, 650 F.2d 290 (Ct.Cl. 1980)

In this unpublished decision, the holding went against the contractor, but is directly on point with our fact situation and provides support for our position that Modification 6 as to the work in wet ground constituted an accord and satisfaction.

The Court upheld the finding of the Agriculture Board, finding "that there was substantial evidence supporting the Board's inference, *inter alia*, that 'about 10 percent' of the project involved wet material due to live subsurface water and that plaintiff was correctly compensated under the Differing Site Conditions clause of the contract for the extra work involved in the extraction of this material;...that a change order covering a portion of the project constituted an accord and satisfaction and the Board did not err therefore in excluding from the allowance of plaintiff's claim for additional compensation for excavation of wet material that work (*sic*) covered by the change order;..."

*Laka Tool & Stamping Co., Inc. v. U.S.*, 639 F.2d 738 (Ct.Cl. 1980)

Here the Court also found an accord and satisfaction, but as to claims other than those being presented. The Court found no evidence that in negotiating an agreement the parties had considered the present claim, or that the parties intended to bar this claim. The Court also held that the contractor had not waived its claim by failing specifically to reserve its rights when the agreement was made. "The language of the agreement certainly does not amount to an express waiver of the

present claim. As discussed above the modification agreement applies to other claims entirely."

*Mass. Bay Trans. Authority v. U.S.*, 129 F.3d 1226 (Fed.Cir. 1997)

Here the Federal Circuit relied upon *Brock & Blevins, supra,* and stated "Neither was there evidence of an intent to finally dispose of the dispute nor sufficient and undisputed elements of an accord and satisfaction. (an accord and satisfaction requires consideration and a meeting of the minds)."

Also, in 1 of only 2 discussions of the issue, (see CYR in conclusion) the Court stated, "Thus it is appropriate to look at the surrounding circumstances, to determine whether the change order was intended to be, and is, a fully integrated settlement of the disputed issue. "It is not only the writing that controls whether the document is fully integrated, but also the circumstances surrounding its execution.' 'The writing cannot prove its own integration.'..."whether a writing was adopted as a completely integrated agreement may by proved by 'any relevant evidence', that 'a writing cannot of itself prove its own completeness,' and that 'wide latitude' must be allowed for inquiry into surrounding circumstances.)" citations omitted

*King Fisher Marine Service, Inc. v. U.S.* 16 Cl.Ct. 231 (1989)

In this case the Court denied the contractor's claim after examining the circumstances in reference to each of the 5 elements of an accord and satisfaction.

The Court's analysis implied that "competent parties" and "proper parties" are equivalent and found that element met by the fact that the same parties that negotiated the change order were the parties before the Court.

The Court found that the government had paid the contractor according to the terms of the agreement meeting the consideration element.

Because the contractor submitted a proposed change in the contract price for work performed pursuant to the change order the bona fide dispute element was met.

The parties negotiated the dispute and reduced their agreement to writing which included the language that such "'modification constitutes compensation in full on behalf of contractor...for all costs and markups directly or indirectly attributable to the changes ordered herein.'" The contractor could not have failed to understand the significance of the language, nor that the money paid constituted an accord and satisfaction of all claims related to the change order. Thus, the meeting of the minds element was present.

Finally, the Court determined that the claims before it were based upon the change order. That is, the subject matter of the modification was the same as that stated in the contractor's complaint., therefore meeting the proper subject matter element.

*Valcon II, Inc. v. U.S.*, 26 Cl.Ct. 393 (1992)

This Court held it irrelevant that a delay occurred after the execution of a modification and release. A general release bars claims based upon events occurring prior to the date of the release. In this case the delays occurred because of the work that was the subject matter of the modification.

Further, the Court found it clear that the contractor believed it had a delay claim when it executed the release, but failed to reserve its rights in the modification.

*CYR Constr. Co. v. U.S.*, 27 Fed.Cl. 153 (1992)

This claim related to the impact of changed work on unchanged work. "Agreement as to the costs for the changed work itself, in the absence of express negotiations, does not establish an accord and satisfaction for resulting impact delays on unchanged work."

The government argued that the language in the release that it deals with all costs and markup "'directly or indirectly attributable to the change order.'" included all delays incident to both changed and unchanged work. The contractor argued that covered only delays to the changed work. The Court found both interpretations to be reasonable, stating "When the same language may be cited as reasonable support for each party's contentions, the contract is ambiguous."

This last finding of ambiguity was not seen in any other decision read, but may be looked at as nearly another element in the finding of an accord and satisfaction, especially in light of the fact that such releases must necessarily be broad in scope - they are after all intended to cover costs that may occur in the future, and therefore impossible to specify.

*Westerhold v. U.S.*, 28 Fed.Cl. 172 (1993)

This case was fairly straight forward. A modification for monetary compensation was agreed to, but a time extension was specifically excluded and the parties continued to negotiate time after the modification was signed. The Court found no meeting of the minds as to time and that the parties did not intend for the modification to bar a later claim for time.

*Coastal Industries v. U.S.*, 32 Fed.Cl. 368 (1994)

In this case, as in *Westerhold*, the Court found no meeting of the minds based on continued negotiation after signing of the modification.

*C&H Commercial Contractors v. U.S.*, 35 Fed.Cl 246 (1996)

In this decision the Court presented an extensive explanation of the 5 elements of accord and satisfaction. The result seemed to require a finding that the modifications, containing no exceptions or reservations, barred the contractor from further claims for delay and impact damages. However, the Court then admitted parol evidence based on the exception to that rule that in the case of mutual mistake or fraud or a material misrepresentation upon which the other party reasonably relies.

In this case the contractor was able to present persuasive evidence that throughout the negotiations the parties expressly agreed that the modifications would not affect delay/impact costs and that those costs could be pursued in a subsequent claim, that the contractor expressly refused to sign the agreements unless the government agreed to exclude those costs, and that the contractor specifically reserved its right to file claims at the conclusion of the project.

Note: the releases in these modifications were hum-dingers and even excluded EAJA.

*Morris v. U.S.*, 39 Fed.Cl. 7 (1997)

Here a property buyer insisted on rent being prorated between buyer and seller for the month of the sale. The seller stated that no rent had been paid so there was nothing to prorate. The buyer insisted on compensation and the seller offered $2,000 credit on the purchase price.

It turned out that tenants in the property had not been paying rent and that fact was not revealed to the buyer. In a suit to rescind the contract and for damages for lost rental income the seller argued that an accord and satisfaction as to unpaid rent had been made by the $2,000 credit.

The Court held there was no evidence that at the time the $2,000 credit was made either party was aware of any claim and therefore there was no meeting of the minds regarding the import of the credit. Although not stated in the opinion, it also seems that the situation would fall under the element requiring that there be bona fide dispute that an accord and satisfaction is made in settlement of.

*Statesman Sav. Holding Corp. v. U.S.*, 41 Fed.Cl. 1 (1998)

Here the Court found an agreement that so specifically addressed what was included that it was not intended to be a global release, and that no meeting of the minds had occurred as to the claim before it since it was not specifically stated in the agreement.

*Pathman Const. Co.* 88-1 BCA ¶20,389

This Board held that the contractor's signing of the modification without reservation established an accord and satisfaction.

Attached here is a copy of a previous memo summarizing decisions made in various Boards of Contract Appeals based on the 5 elements. Other decisions found which deal summarily with the issue, as in *Pathman, supra*, have not been included here since they offer no insight into the analysis of whether an accord and satisfaction exists.

**CONCLUSION:**

Although there are many decisions such as *Pathman* which dismiss contractor's claims with a summary "You signed it, you bought it." conclusion, there are also many cases in which the contractor was allowed to argue and present evidence as to the intent of the parties at the time of executing an agreement.

Although, "As a general rule, the execution of a release which is complete on its face reflects the contractor's unqualified acceptance and agreement with its terms and is binding on both parties.", *C&H, supra*, the mere existence of an agreement is not necessarily conclusive evidence in itself. "Modification agreements generally are not considered to be independently conclusive evidence that the parties intended that the agreement include impact costs." *CYR Const. Co., supra* (see also *Massachusetts Bay, supra*)

**3. Suspension of Work**

Entire delay in ordering new technique to overcome differing site condition compensable under the suspension of work clause. Beauchamp Constr. Co. v. United States, 14 Ct Cl. 430 (1998).

**4. Government Delay of Work**

Court construed that recovery of impact costs are recoverable. Paul Herman, Inc. v. United States, 186 Ct. Cl. 743, 406 F.2d 1357 (1969).

**5. Unabsorbed Overhead**

Contractor can recover as damages the amount of overhead on a daily basis allocable to the period of the overrun for which the Government is responsible. J.D Hedin Const. Co., Inc. v. United States, 347 F.2d 259.

**6. Loss of Effeciency**

A contractor may recover loss of efficiency if it can prove both that a loss of efficiency has resulted in increased costs and that the loss was caused by factors for which the Government was responsible. Luria Bros. & Co. v. United States, 177 Ct. Cl. 676, 369 F.2d 701 (1966).

**List of Exhibits**

See attached Exhibit A.

**List of Witnesses**

1. Claudette Weber, 435 Hillway Drive, Redwood City, CA 94062. Mrs. Weber can testify as to the biding for the project, the scope of work, the performance under the contract, the claims asserted by the Plaintiff.
2. Frank Versaw, 2220 East Bijou, St. 156, Colorado Springs, CO 80909. Mr. Versaw can testify as to the claims asserted against the Defendant.

3. John M. Steenbergen, Contracting Officer, Department of Labor, address unknown,. Mr. Steenbergen can testify as to the biding for the project, the scope of work, the performance under the contract, the claims asserted by the Plaintiff, and the defenses raised by the Defendant.
4. Troy Caperton, DMJM, 2101 Wilson Blvd., Suite 200, Arlington, VA., 22201. Mr. Caperton can testify as to the biding for the project, the scope of work, the performance under the contract, the claims asserted by the Plaintiff and the defenses raised by the Defendant.
5. Kim Murphy, DMJM, 2101 Wilson Blvd., Suite 200, Arlington, VA., 22201. Ms. Caperton can testify as to the biding for the project, the scope of work, the performance under the contract, the claims asserted by the Plaintiff and the defenses raised by the Defendant.
6. Stanley A. Burger, Chief, Division of Administrative Services, Department of Labor, address unknown. Mr. Burger should be able to testify regarding the Department of Labor assessment of the Change Order Proposals and the assessment of A/E error or mistake in the design of the project for the Change Order Proposals submitted by Plaintiff in this matter.

RESPECTFULLY SUBMITTED,
RONALD L. ROBERTS, P.C.

s/ Ronald L. Roberts

Ronald L. Roberts
Attorney for Brero Construction, Inc.
P.O. Box 3235
Monument, CO 80132
719/593-7773 Telephone
719/531-7312 Facsimile

OF COUNSEL:

Michael Pisias, Esq.
Law Office of Michael Pisias
177 Post Street, Suite 700
San Francisco, CA 94108