IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BRERO CONSTRUCTION, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 00-775C |
| | ) | (Judge Wheeler) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff's Objections to Exhibits and Expert Witness Testimony

Pursuant to the Court's February 20, 2006 Order, the Plaintiff hereby submits its Objections to Exhibits and Expert Witness testimony:

Plaintiff has no objections to the exhibits.

Plaintiff's Expert Witness Questions:

Question: State your name for the record?

Answer

Frank W. Versaw.

Question: What are your career highlights?

Answer:

President of a Contract Management Consulting firm specializing in contract administration and disputes resolution services for the construction industry;

Adjunct Associate Professor for Defense System Management and Logistics System Management undergraduate degree programs;

Deputy Director of Engineering on the Consolidated Space Operations Center (CSOC), Communications Segment program;

Deputy Activation Manager for site engineering, installation, integration and test activities; briefed daily status to USAF regarding site coordination and planned work activities;

Systems Test Manager on high volume production of air operations, weapons control, and communications systems and related components;

Expert Witness for schedule and quantum presentations; and

Obtained all college-level credits while working full-time.

Question: What is your education?

Answer:

Master of Science in Management; Colorado Technical University, Colorado Springs, CO; December 1990

Bachelor of Science in Business Administration; University of Colorado, Colorado Springs, CO; December 1983. Emphasis: Production and Operations Management. Minor: Computer-based Information Systems.

Additional 90+ credits in Defense Systems Management curriculum; Colorado Technical University; Colorado Springs, CO; 1987-1989

Question: What is your work experience?

Answer:

December 1998 - Present: *President, VSM, Inc.*

Currently provides independent contract management and disputes resolution consulting services.

January 1998 - December 1998: *President, ICE, Inc.*

Responsible for the management of corporate operations, services and client support. Responsible for managing Contract Management, Risk Management, and Disputes Resolution services for clients in the construction industry as well as production/manufacturing and DoD systems. Also responsible for formulating positioning strategies for the development, presentation, and negotiation of client work products, assigning personnel to client support teams, final review of work products, marketing, staff training, and providing expert witness testimony.

April 1996 - December 1997: *Senior Consultant, ICE, Inc.*

Responsible for Contractual Disputes Resolution, normally effected through the development of Request for Equitable Adjustment (REA) change order proposals; as well as mediation, arbitration, Alternate Disputes Resolution (ADR), and litigation research packages. Other duties include supporting clients with contract administration, risk management, business management, and proposal support consulting services.

August 1990 - March 1996: *Senior Program Director, Excell, Inc.*

Responsible for managing Contract Management, Risk Management, and/or Disputes Resolution services for clients in diverse business fields such as, construction, production/manufacturing, and DoD systems. Job duties required extensive travel to directly support and/or manage work efforts in client's

facility/work site. Assigned on special project for 16 months to work for a client on the construction of a high-rise federal correctional facility in Miami, Florida, providing project engineering and contract administration support.

April 1991 - January 1992: *Adjunct Associate Professor, Department of Arts, Science, and Management, Colorado Technical University*

Responsible for teaching upper level undergraduate courses in DoD Acquisition Processes, Project Management, and Configuration Management Technology and Engineering for the Defense Systems Management and Logistics Systems Management degree programs.

May 1989 - July 1990: *Deputy Director of Engineering, Contel Federal Systems (Currently GTE Government Systems)*

Responsible for management of the Engineering Department's activities including: project engineering, systems requirements analysis, design engineering, specialty engineering, manufacturing/activation support, sustaining engineering, marketing support, cost/schedule/performance management, and manpower projection/utilization management. Additional duties included coordination of the Engineering activities with the customer and all intra-company departments and the customer to ensure that the technical projects were high quality, met the specified requirements, and were delivered per the contract schedule. Collateral duties include assignments as Acting Director of Marketing and responsibility for the Engineering department’s special projects.

January 1986 - April 1989: *Deputy Site Activation Manager, Contel Federal Systems*

Responsible for installation, site integration, production, material control, systems test support, IOT&E support crews and activities, and activation support staff for the CSOC project at Falcon Air Force Base (AFB). Coordinated all site facility, security, and personnel requirements. Served as the company representative at daily briefings for USAF personnel regarding on-site activities.

Provided technical interface for Government review of site installation/activation documentation and activities. Interfaced with 20-plus other Falcon AFB contractors. Performed as Proposal Manager for several add-on projects, which were completed on schedule and under cost. Other duties included generation on the CSOC project’s first “B” and “C” specifications, test procedures and test plans. Management of the Integrated Test Bed Facility included lab development for off-site integration and analysis.

January 1978 - May 1985: *Systems Test Manager, Litton Data Systems*

Responsible for the operation of the Systems Test Engineering Department including coordination of workflow, interaction with production departments, personnel management, budgeting, scheduling, and proposal preparation. Was responsible for 9 projects: TACFIRE, TSQ-73, RBD, CIS, L3212, F-15, ITAOC, Saudi Comm, and BCCS. Trained in Quality Assurance, Quality Engineering, and Manufacturing Engineering for advancement in the Product Assurance Department. Responsible for the Unit Test Department of the Product Assurance Group.

Responsible for production testing for the Royal Saudi Arabia Land Forces C3 system. Involved in the Systems Engineering process for the C3 system in preparation of test requirement outlines, detailed test procedures, and acceptance test reports and the conduct of first Article System and unit level tests using

software diagnostics and semi-automatic test equipment. Responsible for testing refurbished shelters and associated subsystems for the Marine Corps Integrated Tactical air Operations Center (ITAOC).

May 1974 - September 1977: *Fire Control Technician, U.S. Navy*

Responsible for the operation, preventive maintenance, and repair of the MK-106 Underwater Fire Control System on diesel-electric fast attack submarines.

Question: Do you have any Professional Certificates and what are they?

Answer:

Yes, Quality Assurance Management, Colorado Technical University, June 1989

Configuration/Data Management, Colorado Technical University, June 1989

Question: Have you had your deposition taken or given testimony as an expert and when?

Answer:

Yes, GTE Government Systems vs. U.S. Air Force Space Division; deposition, June 1995;

Calumet Construction Co., Inc. vs. United Steel Erectors, Inc. Arbitration; expert witness, February 1998;

Williams Construction Co., Inc. vs. Pryor Nitrogen, Inc. Arbitration; deposition, July 1998;

Williams Construction Co., Inc. vs. Pryor Nitrogen, Inc. Arbitration; expert witness, August 1998

Question: Are you familiar with the San Jose, California Job Corps Center and what was your involvement?

Answer: Yes, I worked on the following:

Time Impact Analysis dated October 9, 1998,

Revised Quantum dated December 2, 1998,

Final Loss of Productivity Analysis dated September 20, 1999,

Revised COP 170 and 222,

Time Impacted Analysis including A/E errors in October 1999Revised COP 170 and 222

Question: What steps did you take in preparing these documents?

Answer:

I researched the project including talking to the owner of Brero, Claudette Weber, about what occurred on the project, reviewed the project records and discussed them with Claudette Weber, reviewed the accounting records for the company and the project, reviewed the schedule documentation available, prepared the proposals based upon my research, discussed the proposals with the owner and concluded that Brero was entitled to compensation as stated in the proposals.

Questions: What were your conclusions from the preparation of these documents?

Answer:

The Department of Labor (hereinafter ”DOL”) provided defective and deficient plans and specifications which included admitted architect errors and omissions (“A/E Errors”) for the construction of the Job Corps Training Center in San Jose, California. These defective and deficient plans resulted in inefficiencies and delays in the construction of the facility.

The DOL evaluated the claims submitted by Brero and in many instances through internal review found that the changes were the result of the A/E errors and omissions for which the government was responsible.

Question: Are you aware of any rain delays on the project?

In early 1993, the San Jose area was subjected to very heavy rains. These rains caused the soil in the area of the Job Corps Center to be so saturated with water that progress on the project would be substantially delayed. In March, 1993, Brero brought the soil conditions to the attention of the Contracting Officer ("C.O.") and the parties engaged in discussions on the appropriate remedy. Ultimately, the C.O. agreed to provide a non-compensable extension of time.

Question: Did the Department of Labor make any changes to the project?

Answer:

Throughout the lifetime of the project, the Department of Labor made several changes to the contract. They included some additional requirements. For many of these changes, the C.O. determined that no additional costs were incurred and that no additional time would be required for completion of the job. The project was substantially completed on November 7, 1994.

Brero made several requests for equitable adjustment regarding the changes and the supposed inefficiencies they caused. A number of them have been resolved through a settlement at the Department of Labor Board of Contract Appeals. Brero submitted a Time Impact Analysis dated October 9, 1998, a Revised Quantum dated December 2, 1998, a Final Loss of Productivity Analysis dated September 20, 1999, revised COP 170 and 222, and a Time Impacted Analysis including Architect and engineer errors in October 1999.

Question: What architect and engineer errors did your find?

Answer:

The Architect and engineer errors are detailed in the demonstrative exhibits provided, the A/E error schedule identified in exhibit A244 and the supporting spreadsheet.

Question: What Change Orders remain on the project?

Answer:

Two sets, which were denied by the C.O. and not resolved by settlement remain: They are Change Order Proposal ("COP") 170 and COP 222. COP 170, which is a request for a $246,411.97 equitable adjustment was based upon the additional "general conditions" costs generated by the change orders and the corresponding delay they caused in completion of the project. COP 222 is a request for $ 697, 826.80 in equitable adjustment for "loss of productivity" in the framing work on the project, caused by actions of the Department of Labor.

Question: Do you believe that the Plaintiff is entitled to compensation as stated in the proposals you have generated?

Answer: Yes, as stated in the proposals.

Question: Are you aware that the Government has asserted a claim against Brero?

Answer:

Yes, the Government asserted a $9,870 claim against Brero for liquidated damages as a result of Brero's completing the project 42 days ( the C.O. determined that Brero should only be held responsible for 42 days of the 59 day delay) at the contractual rate of $ 235 per day which I do not agree with. I do not believe that Brero should not be held responsible for any liquidated damages.

s/ Ronald L. Roberts
RONALD L. ROBERTS
Post Office Box 3235
Monument, CO 80132
Tele: (719) 593-7773
Fax: (719) 531-7312
Attorney for Plaintiff
April 28, 2006